UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANCY MUGGLETON,

      Plaintiff,

      v.                              CASE NO. 8:05-CV-02039-T-23MAP

UNIVAR USA, INC., a Florida Branch
of a Washington Corporation,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

This is an action under the Florida Civil Rights Act of 1992 ("FCRA") (*see* Fla. Stat. §

760.10) charging hostile work environment and retaliation based on age and sex.[1]  The

Defendant moves for summary judgment arguing Plaintiff's judicial claims exceed the scope of

her administrative ones; alternatively, Defendant asserts Plaintiff fails to make an actionable case

under the FCRA (doc. 46).  In response, the Plaintiff sidesteps the procedural issue and

maintains  materially disputed facts warrant the motion's denial (doc. 50).  After considering the

summary judgment record, I find the Plaintiff sufficiently exhausted her administrative remedies

but fails to make out an actionable case for discrimination; therefore, I recommend the district

judge grant the Defendant's motion.[2]

    *A.  Standard of Review*

_____

   [1]  Plaintiff initially filed her complaint in state court; however, the Defendant removed
the matter to this Court asserting diversity jurisdiction (doc. 1).

   [2]  The district judge referred this motion to me for a report and recommendation
pursuant to 28 U.S.C. § 636 and Local Rule 6.01.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court examines the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  *Id.* at 255.

### B.  Background

The material facts are not particularly in dispute.  The Plaintiff worked for the Defendant for more than twenty years eventually attaining the position of branch administrative manager in the Tampa office in 2000.  But in 2004, she faced an unwelcome choice.  Her supervisor (Robin Hazel), dissatisfied with her performance as a manager and particularly her inability to get along with others, decided to restructure Tampa's administrative department and eliminate her position, a move he had made in another branch (Savannah).  On November 22, 2004, Hazel met with the Plaintiff and gave her two options: she could accept a layoff with eligibility for the company's severance package or accept a lesser position without a loss of pay.  Plaintiff chose the demotion.

A little more than a month later, and while still working at the firm, the Plaintiff filed a

sex and age discrimination charge against her employer with Florida's Commission on Human

Relations.  In sum, this charge focused on the events surrounding her demotion and her

perceptions as to its cause. For example, she noted she was "one of the oldest female managers"

at the Defendant's Tampa branch and "until the events occurring on or around November 22,

2004," she had never received a negative performance evaluation.[3]  She claimed her "attempts to

improve relations among personnel, as on older female branch manager, were the reason [she]

was effectively forced out of [her] position."  Moreover, she charged that Hazel's reasons for his

November 22 actions were "but a pretext for retaliatory and unlawful employment practices."

Yet, she failed to support these conclusions with any factual detail other than to say the

Defendant unfairly and illegally singled her out and treated her differently than it did others:

> "I have been discriminated against on the basis of my age and gender in several
> ways, including, but not limited to, being subjected to a policy and company
> review procedure that had an adverse impact on me solely due to my age and
> gender.  As a result of Univar's discrimination, and the perceived stereotype of
> older, female managers, held by my coworkers I have suffered severe mental
> pain, emotional distress and economic injuries."

*See* doc. 47, ex. L.

While still working for Defendant, the Plaintiff filed the instant four-count complaint

charging hostile work environment and retaliation based on sex (counts one and three) and age

(counts two and four).  And though she references her demotion in the complaint, much of her

allegations center on a single event with a coworker (Gary Wanek), an incident she omitted

mentioning in her administrative charge.  According to the Plaintiff, on February 24, 2004,

Wanek unexpectedly charged into her office.  He slammed the door behind him, pointed his

---

[3] By this time, Plaintiff was over fifty years old.

finger at her, and emphatically stated: "It's got to stop.  You just have to stop it."  Plaintiff

thought Wanek "incoherent"; furthermore, she "had no idea" what he was complaining about or

what had prompted the outburst.  After he left her office, Plaintiff waited, hoping he would calm

down.  She then confronted him in his office.  Wanek continued his rant slamming articles on his

desk and cursing.  Plaintiff still did not understand what had so disturbed him.[4]  Fearful, she

reported the incident to Hazel.  Hazel investigated the matter and reported it to human resources.

Although Wanek offered to resign, Hazel instead issued a written reprimand.  After these events,

Plaintiff concedes Wanek never acted out in such a manner and did not exhibit any behavior she

considered harassing.  *See* doc. 47, ex. A,  Plaintiff's deposition at pp. 133-145.

    Notably, Wanek never mentioned sex or age during his tirade that day.  Irrespective,

Plaintiff now serves up this incident, which she characterizes in her complaint as Wanek's

"verbal assault," as evidence of a hostile work environment.  Moreover, she causally links her

reporting of this incident and Wanek's offensive comments about some of the female staff to her

demotion.  She makes this connection even though these events are not particularly temporarily

related and Hazel, after demoting the Plaintiff, promoted an older female (Kirkner) to perform

the Plaintiff's former budgeting and auditing tasks.[5]

---

[4]  According to the Defendant, Wanek was complaining about the Plaintiff's interference with the actions by one of his staff (Nancy Dellobuono) (doc. 47, ex. II).  While both sides dispute the ferocity of Wanek's behavior, for purposes of this motion I accept the Plaintiff's version of the events.

[5]  After the Defendant demoted Plaintiff, Kirkner complained to Hazel about Plaintiff's performance.  So did others, including customers. On August 29, 2005, Hazel, with corporate approval, terminated the Plaintiff for poor performance.  This occurred after Plaintiff filed her complaint.  She has not amended her complaint to allege her firing violated either Title VII or the FCRA.

*C. Discussion*

*1. the procedural bar issue*

Before filing a Title VII or FCRA action, a plaintiff must exhaust her administrative remedies by filing a timely charge with the appropriate agency; moreover, the scope of the plaintiff's judicial complaint is limited by the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination. *Gregory v. Georgia Dept. of Human Resources,* 355 F.3d 1277, 1279-80 (11th Cir. 2004); *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 589 n. 8 (11th Cir. 1994); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970); *Pritchard v. Shands Jacksonville Medical Center, Inc.,* 2005 WL 2077310 (M.D. Fla. 2005) (applying exhaustion requirement to FCRA).[6]  The reason for this is to give the administrative agency the first opportunity to investigate the alleged discriminatory practices thereby allowing it to perform its designed role in obtaining voluntary compliance and promoting conciliation efforts.  *Gregory,* 355 F.3d at 1279.  Despite this exhaustion demand, the Eleventh Circuit has admonished district courts to be "extremely reluctant" in barring discrimination claims for "procedural technicalities."  Accordingly, the scope of an EEOC complaint should not be "strictly interpreted."  *Id.* at 1280 (citing *Sanchez,* 431 F.2d at 460-61, 465).

Frankly, whether Plaintiff's complaint is like, related to, or grew out of the allegations of her administrative charge, as the Eleventh Circuit's test guides, presents a close question.

---

[6]  Although she bases her claims on the FCRA, that act is patterned after Title VII, whose case law governs the act's application.  *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998) (noting Florida cases standing for this proposition); *Pritchard*, 2005 WL 2077310, at *2 (noting the same and construing FCRA's exhaustion requirement the same as Title VII's).

Plaintiff's charge to Florida's Commission on Human Relations focused on her demotion and her perceived notions for that adverse action. Never did she mention hostile work environment as a cause nor as a problem she encountered. Regardless, and particularly given this circuit's liberal reading of such administrative complaints, her judicial complaint sufficiently relates to her administrative one to satisfy the exhaustion demands under Title VII or the FCRA.

### 2. hostile work environment or harassment claims

To make a claim for harassment under Title VII or the FCRA, a plaintiff must show: (1) she is a member of the protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected class; (4) the harassment was sufficiently severe or pervasive to affect a term, condition or privilege of employment; and (5) a basis for employer liability. *Cotton v. Cracker Barrel Old Country Store, Inc.,* 434 F.3d 1227, 1231 (11th Cir. 2006); *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*). A plaintiff can rely on one of two theories to prove her claim – hostile work environment ("severe or pervasive conduct") or the harassment culminated in a "tangible employment action" against her. *Cotton,* 434 F.3d at 1232. Plaintiff seems to imply both, although it is far from clear.

Not all unwelcome or offensive conduct is sanctionable. Title VII and the FCRA are not general civility codes; these statutes do not make actionable the "ordinary tribulations of the working place." *Id.* at 1234. Accordingly, courts do not view workplace conduct in isolation; instead, examining whether an environment is sufficiently hostile or abusive demands looking at all the circumstances – the frequency of the discriminatory conduct, its severity, its nature (whether it is physically threatening or humiliating, or a mere offensive utterance), and whether it unreasonably interferes with an employee's work performance. *Clark County School Dist. v.*

6

*Breeden*, 532 U.S. 268, 270 (2001).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.  *Id.*   "The paradigm of sexual harassment as federally prohibited employment discrimination occurs when an employee's expressed terms of employment, such as salary or continued employment, are conditioned upon compliance with the employer's sexual demands." *Mendoza,* 195 F.3d at 1245.  Absent such explicit discrimination, the employee must sufficiently connect her allegations of discrimination to a violation of Title VII.  *Id.*  Namely, she must show the workplace was so "permeated with discriminatory intimidation, ridicule, and insult" that it altered the conditions of her employment and created an abusive working environment.  *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002); *Mendoza,* 195 F.3d at 145-46.  Measuring the severity requires accounting for two components: one subjective and the other objective.  Not only must the employee perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment (the subjective part), but that perception must be objectively reasonable.  In other words, "a reasonable person would find [the environment] hostile and abusive."  *Mendoza,* 195 F.3d at 1246.  This objective analysis requires asking about the frequency of the conduct, its severity, its nature (threatening or humiliating), and whether it unreasonably interfered with the employee's job performance.  *Id.*  Applying these guides, Plaintiff fails to make a *prima facie* case because any harassment she suffered due to her age, sex or both was isolated and not so hostile, pervasive, and abusive to be actionable.

Essentially, Plaintiff posits these facts: she was one of the older females working in the Tampa branch; she was a dedicated employee who had never received a negative evaluation; Wanek commonly used profanity; Wanek yelled at her for some unknown reason on February

7

24, 2004; Wanek often made rude, insufferable, disparaging, or insensitive remarks about females in the office (bonehead, druggie, bitch, your are what you eat, blonde bimbo, not the brightest crayon or the brightest bulb in the box, did you get laid or did you just get drunk, devil-worshiper, and misery)[7]; Plaintiff reported the complaints about Wanek's conduct toward some of the female staff and his actions on February 24, 2004, to Hazel; Wanek made fun of Plaintiff by saying her reading glasses made her look like an old lady; Hazel made similar age-related remarks about her (commenting to a visitor that "she is older than dirt" and "she has been here probably as long as the building has been here"); and Hazel's isolated comments about her age and Wanek's tirade are somehow linked to her demotion and change in job responsibilities. From all this she argues she suffered a hostile work environment (namely, suffered "severe or pervasive conduct").  But this conduct does not rise to the serious, pervasive level needed for actionable discrimination under Title VII or the FCRA.  *See Mendoza,* 195 F.3d at 1246-47 (citing a litany of cases rejecting harassment claims for conduct more egregious than here).  For example, the Plaintiff concedes Wanek, despite his boorish behavior, never said anything derogatory to her other than the noted, isolated comments about her age (doc. 47, Plaintiff's deposition, ex. A at pp. 99-100).[8]  His tirade appeared to have nothing to do with her sex or age. After she reported his actions to her superior, Wanek never again acted out in such a manner toward her.  Nor has Plaintiff shown her demotion was causally linked to her reporting Wanek's

---

[7]  It is unclear to me from the record if Wanek made the majority of these comments directly to the victim of his insult and or mainly in passing when describing that person to others while in the Plaintiff's presence or other females.  Regardless, the comments were rude.

[8]  Wanek, according to Plaintiff, called her "Mugsy."  Given the Plaintiff's last name, such a moniker, when considered objectively, seems endearing.

actions to Hazel or Hazel's remarks about her age. Indeed, these events are not so temporally related as to give rise to a genuine issue of fact as to causation. *Cotton,* 434 F.3d at 1232 (discussing temporal proximity between the harassment and the tangible employment action). Besides, Hazel delegated many of Plaintiff's duties to someone older than Plaintiff, a fact that negates any discriminatory animus based on the Plaintiff's sex or age.

### 3. retaliation

Retaliation is a separate violation of Title VII. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). And the gist of Plaintiff's retaliation claim is that the Defendant demoted her because she complained about Wanek's conduct towards her and other females in the office. In order to establish a *prima facie* case of retaliation, she must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; (3) and the adverse action was causally related to the protected expression. *Cotton,* 434 F.3d at 1233. While Plaintiff meets the first two prongs, she fails to meet the last for two reasons. First, she offers no evidence, as previously discussed, that her reporting and her demotion are causally related other than to say one happened sometime after the other. Furthermore, she fails to counter the Defendant's nondiscriminatory motives for the demotion. Namely, she has not proffered sufficient evidence to create a genuine issue of material fact regarding whether each of the Defendant's articulated reasons for her demotion is pretextual. *See Chapman v. AI Transport,* 229 F.3d 1012, 1024-26 (11th Cir. 2000) (*en banc*).

The Defendant lists numerous, specific reasons why Hazel demoted Plaintiff: unhappiness with her management style and performance; constant bickering with other employees; an inability to resolve conflicts to the point of not speaking to some employees;

complaints by customers; complaints by numerous employees including one saying the Plaintiff

had called him "Hitler" and "MF"; Hazel's inordinate time spent dealing with all this; and

Hazel's decision to eliminate her position for efficiency purposes.  *See* doc. 47, Hazel

declaration at ex. FF.  Against this litany, Plaintiff counters with vague claims and conclusions.

Simply put, her argument is this: because I am a dedicated employee who worked with company

for over twenty years without an adverse incident these reasons must be pretextual.  That

argument avoids her obligations for overcoming the Defendant's stated reasons.  *Chapman*, 229

F.3d at 1030; *see also Rojas*, 285 F.3d at 1342 (a court must be careful not to allow a Title VII

plaintiff to litigate whether she was a good employee);  *Standard v. A.B.E.L. Services., Inc.*, 161

F.3d 1318, 1327 (11th Cir. 1998) ("The pretext inquiry is concerned with the employer's

perception of the employee's performance, not the employee's own beliefs").

   *D.  Conclusion*

   For the stated reasons, I recommend the district judge grant the Defendant's motion for

summary judgment (doc. 46).

   IT IS SO REPORTED at Tampa, Florida on December 7, 2006.


*Mark A. Pizzo*
_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

   Failure to file and serve written objections to the proposed findings and recommendations
contained in this report within ten (10) days from the date it is served on the parties shall bar an
aggrieved party from a *de novo* determination by the District Court of issues covered in the
report, and shall bar the party from attacking on appeal factual findings in the report accepted or
adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.
28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. 1982)

(*en banc*).

Copies to:      Honorable Steven D. Merryday
                Counsel of Record